1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMES M. STEVENS,

            Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

         Defendant.

_____/

Case No. 1:21-cv-00878-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff James M. Stevens ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 11.)

## II.        BACKGROUND

Plaintiff was born on April 25, 1962, has a limited education, and previously worked as a delivery driver.  (Administrative Record ("AR") 54, 68, 186, 222, 232, 975, 981, 982.)  Plaintiff filed a claims for DIB payments on September 8, 2014, alleging he became disabled on September 1, 2012, due to chronic obstructive pulmonary disease (COPD), removal of lower left lung, depression, back pain, and knee pain.  (AR 54–55, 68–69, 86–87, 93, 180, 186, 222, 232,)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on March 27, 2017, finding Plaintiff not disabled.  (AR 15–26.)  Plaintiff appealed the decision to the district court, who, on March 28, 2019, remanded the case for further proceedings in light of the ALJ's failure to reference Plaintiff's obesity in the hearing decision.  (AR 1020–48.)  Upon remand, the Appeals Council directed the assigned ALJ to "take any further action needed to complete the administrative record and issue a new decision."  (AR 1051.)  The ALJ then conducted another hearing and issued a new written decision once again finding Plaintiff not disabled.

### A.        Relevant Evidence of Record[3]

#### 1.        Medical Evidence

In November 2012, Plaintiff presented to Kaiser with complaints of back pain, and established care.  (AR 269–70).  In June 2013, Plaintiff complained of soreness, redness, and swelling in his feet, which was "intermittent."  (AR 276–77, 282.)  On examination, Plaintiff had "moderately prominent superficial varicosities" with "trace pretibial edema."  (AR 283.)  Other findings were normal, including a normal EKG, normal cardiovascular and respiratory examinations, normal sensation and muscle tone, full (5/5) strength, and normal mental status.  (AR 283.)  The provider recommended that Plaintiff adjust his salt intake and use support stockings.  (AR 283.)

Archan M. Shah, M.D., also ordered imaging studies in June 2013.  (AR 290–321.)  An x-ray of Plaintiff's chest showed an "[i]ll-defined left lower lobe opacity with associated adjacent linear stranding" with no acute cardiopulmonary abnormality.  (AR 291, 302.)  Plaintiff's CT scan

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

showed an irregular density in the lower lobe of the left lung and some associated edema and emphysematous changes. (AR 290–91, 312–13.) Follow up imaging revealed pulmonary nodules in the left lower lobe of the lung with minimal radioglucose activity suggesting a benign rather than a malignant etiology, and Plaintiff had "moderate airflow obstruction" on spirometry testing. (AR 325, 337.) Cervical spine imaging showed moderate degenerative disc disease at two levels with loss of intervertebral disc height, and foraminal narrowing at one level. (AR 323.)

In October 2013, Plaintiff complained of "moderate" wheezing. (AR 357.) He was in no distress and his oxygen levels were at 98 percent. (AR 357.) Plaintiff was prescribed Levaquin and Albuterol. (AR 359.) Later imaging studies showed that the left lower lobe mass had increased in size, and could not rule out malignancy. (AR 360, 367, 377–78.)

Plaintiff presented for a pulmonary consultation with Dr. Shah in January 2014. (AR 382–86.) He reported being asymptomatic, denied shortness of breath and wheezing, and stated he was working in landscaping. (AR 382, 384.) He reported that he had been given a prescription for Albuterol inhaler that he "[did] not use" because he "never feels the need for it." (AR 382.) Plaintiff's lung, heart, and neurologic findings were normal with normal breath sounds, he had no edema or pain in his extremities, and his oxygen levels were 98%. (AR 384). Noting that Plaintiff had "mild obstructive airway disease," Dr. Shah assessed Plaintiff with stage 1 COPD and prescribed Spiriva and Qvar inhalers. (AR 386.) Dr. Shah also recommended further investigation of the left lower lobe nodules (AR 386), which showed some slight changes of the two known confluent densities, no evidence of "hypermetabolic distant metastatic disease," aortic atherosclerotic disease, and unchanged COPD changes. (AR 395.) Thoracic surgery was scheduled for later that month. (AR 403.)

During Plaintiff's pre-surgical consultation, a provider documented Plaintiff's reports of "increasing shortness of breath" with mild shortness of breath upon exertion, including feeling "winded" when carrying a five-gallon water bottle. (AR 414.) Plaintiff also reported that he some coughing and chest tightness when lying down and that his feet were a "little swollen every now and then." (AR 414). Plaintiff's lung, heart, and neurologic examinations were normal, and he had mild lower extremity edema. (AR 415.) During surgery, a biopsy showed that the left lower lobe

mass was "granulomatous disease" and not malignant.  (AR 467.)  The lobectomy was deemed not necessary, and the procedure was terminated.  (AR 467.)

In April 2014, Plaintiff complained to Dr. Shah of shortness of breath and an inability to walk more than 20 yards carrying a five-gallon water bottle.  (AR 657.)  He stated that his cough had improved since the surgery, and he denied chest pain.  (AR 657.)  According to Plaintiff, he stopped using the prescribed Spiriva and Qvar inhalers due to side effects, including blisters and dryness in the mouth.  (AR 657.)  On examination, Plaintiff was in no obvious respiratory distress, but had moderately decreased breath sounds on the left, with normal heart findings and no edema or pain in his extremities.  (AR 658.) Hi oxygen level was 97%.  (AR 658.)  The provider assessed sarcoidosis and recommended steroids.  (AR 660.)

In a May 2014 telephonic consultation, Plaintiff told Dr. Shah that he felt "pretty good" and did not want to take steroids.  (AR 663.)  He reported that his oral thrush had resolved, and his cough had abated, but that he still got shortness of breath with exertion.  (AR 663.)  Dr. Shah recommended that Plaintiff return to the clinic in four months for further assessment.  (AR 663–64.)

Plaintiff attended an internal medicine consultative examination with Christine E. Fernando, M.D. in April 2015.  (AR 762–69.)  Plaintiff had decreased breath sounds bilaterally and prolonged expiratory phase, and his cardiovascular examination was normal.  (AR 765.)  Plaintiff also had good muscle tone and full (5/5) strength in his extremities; no edema; normal ranges of motion in his neck, back, and extremities, with "minimal discomfort" noted in his cervical spine; no swelling in his knees or ankles; and intact sensation and reflexes in his extremities.  (AR 765–68.)  He had "some balance issues" while performing gait maneuvers, but did not require an assistive device to walk.  (AR 767.)

Deborah L. Lacy, Psy.D., conducted a psychiatric evaluation in April 2015, and diagnosed Plaintiff with moderate, recurrent, major depressive disorder.  (AR 815–22.)

### 2.  Opinion Evidence

In June 2013, treater Dr. Shah found that Plaintiff was "[r]estricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house

1    work, office work."  (AR 678.)

2          Following her examination in April 2015, consultative examiner Dr. Fernando opined that

3    Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; he could stand/walk

4    for less than two hours and sit for six hours with his feet elevated; he could occasionally push/pull;

5    and he had no postural or manipulative restrictions but should "avoid operating heavy machinery

6    and any known allergens."  (AR 768.)

7          In May 2015, State agency physician H. Jone, M.D., found there was insufficient evidence

8    in the record for the time period before Plaintiff's date last insured to evaluate his physical

9    functioning.  (AR 62-63.)

10         In August 2015, based on updated records, State agency physician M. Bayer, M.D.,

11   reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[4]  Dr. Bayer opined

12   that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six

13   hours and sit for five hours in an eight-hour workday; frequently climb ramps/stairs, stoop, kneel,

14   and crouch; occasionally crawl and climb ladders/ropes/scaffolds; had no limits on balancing; and

15   must avoid concentrated exposure to pulmonary irritants.  (AR 77–78.)

16         Treater Brian Bellucci, M.D., completed a "Physical Residual Functional Capacity

17   Questionnaire" in December 2016 based on his treatment of Plaintiff for the preceding six months

18   (AR 937–41.)  Dr. Bellucci assessed several functional limitations that existed since January 1,

19   2016.  (AR 938–41).

20   **B.      Administrative Proceedings**

21         The Commissioner denied Plaintiff's application for benefits initially on May 22, 2015, and

22   again on reconsideration on August 13, 2015.  (AR 15, 86–91, 93–98.)  Following a hearing, an

23   ALJ issued a written decision on March 27, 2017, finding Plaintiff not disabled.  (AR 12–26.)

24   ─────────────────────

25   [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
     setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES
26   II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P
     (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an
27   individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's
     RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and
28   'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
     *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff appealed the decision to the district court, who, on March 28, 2019, remanded the case for further proceedings in light of the ALJ's failure to reference Plaintiff's obesity in the hearing decision.  (AR 1020–48.)  Upon remand, the Appeals Council directed the assigned ALJ to "take any further action needed to complete the administrative record and issue a new decision."  (AR 1051.)

On January 28, 2021, Plaintiff appeared with counsel and testified before the ALJ as to his alleged disabling conditions.  (AR 972–97.)  At the hearing, Plaintiff testified he had prior work as a delivery driver.  (AR 981–82.)  He testified that he was unable to work because he could not stay on his feet for more than 15 to 20 minutes due to swelling in his legs and feet and his back "giving out."  (AR 983–84.)  According to Plaintiff, his conditions have gotten worse over time.  (AR 983, 987.)  In 2014, he could stay on his feet for about 45 minutes to an hour, but must now sit after 10 minutes.  (AR 984–85.)  Plaintiff testified he had been wearing compression socks "off and on" for about three years, which helped during the day, but his legs swelled when he took them off.  (AR 984–85.)  According to Plaintiff, his wife bought him a walker two years ago that he used occasionally, and he elevated his legs when laying down.  (AR 985, 987–88.)  Plaintiff also complained of "some bouts of depression" and testified that he was "having a hard time finding someone to see" him for treatment.  (AR 990.)  On a typical day, Plaintiff watched his 5-year-old son, cleaned, and prepared meals, but his ability has lessened due to his conditions, including "emphysema and COPD."  (AR 981, 986–87.)

A VE also testified at the hearings  (AR 50–56.)  He testified that Plaintiff had past relevant work as a truck driver, Dictionary of Operational Titles ("DOT") code 906.683-022, with a medium exertional level as generally performed and a specific vocational preparation (SVP)[5] of 3.  (AR 992.)  According to the VE, as actually performed, the exertional level for the job "could exceed medium."  (AR 992.)

The ALJ asked the VE a hypothetical question in which the VE was to consider a person

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

of Plaintiff's age, education, and work experience, who is limited to light exertional level and with the following additional limitations: the individual in question would be able to occasionally climb ramps, stairs, ladders, ropes, and/or scaffolds; the individual would be able to occasionally balance, crawl, crouch, kneel, and stoop; the individual should not work in environments that would subject them to concentrated exposure to respiratory irritants such as gases, dusts, smoke, and/or fumes; and the individual should not work in environments that would exposure them to unprotected heights or machinery with dangerous moving mechanical parts.  (AR 992–93.)  The VE testified that such a person could not perform Plaintiff's past relevant work.  (AR 992.)  The VE further testified that such a person could perform other light positions under the DOT in the national economy, such as a merchandise marker, DOT code 209.587-034 and SVP 2; cafeteria attendant, DOT code 311.677-010 and SVP 2; and small product assembler I, DOT Code 706.684-022 and SVP 2.  (AR 992–93.)

        In a second hypothetical, the VE was asked by the ALJ to consider the same person as in the first, but an additional limitation to standing and/or walking for two out of eight hours in an eight-hour workday.  (AR 993.)  The VE testified that no prior work would be available, but that such a person could perform the light position of cashier II, DOT code 211.462-010 and SVP level 2, with 50 percent erosion of the national numbers (over 500,000) for the positions that allow a person to sit.  (AR 992.)

        In a third hypothetical, the ALJ asked the VE to consider the person presented in the first hypothetical, but who would need to elevate their legs more than the regularly scheduled breaks every two hours or would otherwise be off task 15% of the workday due to the need to elevate.  (AR 994.)  The VE responded there would be no work such a person could perform.  (AR 994.)  Finally, in a fourth hypothetical, the ALJ asked the VE to consider the same person as in the second hypothetical, but who was limited during an eight-hour workday to sitting for five hours of the eight hours during an eight-hour workday.  (AR 995.)  The VE testified there was no work such a person could perform.  (AR 995.)

**C.      The ALJ's Decision**

        In decision dated March 16, 2021, the assigned ALJ once again found that Plaintiff not

disabled.  (AR 951–64.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 953–64.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2014, and he had not engaged in substantial gainful activity during the period from his alleged onset date of September 1, 2012, through his date last insured of December 31, 2014 (step one).  (AR 953.)  At step two, the ALJ found Plaintiff's following impairments to be severe: chronic obstructive pulmonary disease (COPD), sarcoidosis, degenerative disc disease of the lumbar and cervical spine, obesity, and obstructive sleep apnea. (AR 953–55.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 955.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 [§] CFR 404.1567(b) except [Plaintiff] is occasionally able to climb ramps, stairs, ladders, ropes and scaffolds, and is occasionally able to balance, crawl, crouch, kneel and stoop.  [Plaintiff] should not work in environments subjecting them to concentrated exposure to respiratory irritants such as gases, dust, smoke and/or fumes, or which would expose him to unprotected heights or machinery with dangerous, moving mechanical parts

(AR 955–62.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 956.) The ALJ determined that Plaintiff was unable to perform his past relevant work (step 4), but was not disabled because, given his RFC, he could perform a significant number of other jobs in the local and national economies, specifically office helper, information clerk, and mail room clerk (step 5).  (AR 963.) The ALJ concluded Plaintiff was not disabled at any time from September 1, 2012, the alleged onset date, through December 31, 2014, the date last insured.  (AR 964.)

Because Plaintiff did not file written exceptions and the Appeals Council did not review the

ALJ's decision, it became the final decision of the Commissioner.  20 C.F.R. § 404.981.  (*See also* AR 949.)

**III.      LEGAL STANDARD**

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

9

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record

that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.       DISCUSSION

Plaintiff first contends there is no substantial evidence to support the ALJ's RFC "light work" assessment because records, particularly those post-dating Plaintiff's date last insured, show an inability to stand or walk for more than two hours a day during the relevant period.  (Doc. 15 at 10–14; Doc. 20 at 4–5.)  He suggests that there is "some confusion" as to when this impairment started, thereby requiring the ALJ to call a "medical advisor" pursuant to Social Security Ruling ("SSR") 83-20.  (Doc. 15 at 10–11.)  Plaintiff further asserts that the ALJ failed to address Plaintiff's mental impairments in the RFC, erred in discounting his subjective symptom testimony, and did not meet his burden at step five.  (*See* Doc. 15 at 14–18; Doc. 20 at 5–7.)

The Acting Commissioner responds that that the ALJ properly assessed an RFC for a range of light work based on the relevant evidence in the record.  (Doc. 18 at 13–20.)  The Acting Commissioner further contends that the ALJ's discounting of Plaintiff's mental impairment evidence and subjective symptom statements was not erroneous, and that there was no error at step five.  (*Id*. at 20–26.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.       The ALJ Had No Duty to Call a Medical Advisor**

As he did in his previous appeal (*see* AR 1024–25), Plaintiff contends that the ALJ erred in not requesting a medical expert to assist in determining the date of disability onset.  (See Doc. 15 at 10–11.)  He relies on *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017) and SSR 83-20 for the proposition that where a record is lacking and ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date.  (*See id*.)  As noted by the Acting Commissioner, SSR 83-20 was rescinded and replaced by SSR 18-01p in October 2018, before Plaintiff's March 16, 2021, administrative hearing.  *See* SSR 18-01p, at § III ("This SSR is

applicable on October 2, 2018, . . . We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date."); *see also Petersen v. Berryhill*, 737 F. App'x 329, 332 n.1 (9th Cir. 2018) ("Because the prior [SSR] ruling was in effect at the time of the ALJ's decision, the ALJ was bound to follow it.").  Both Rulings provide guidance on how to establish disability onset date in an individual found disabled. The primary difference is that SSR 18-01p gives ALJs the discretion to appoint a medical advisor to help determine the established onset date, but does not require them to do so per SSR 83-20.  *See* SSR 18-01p, at § I.B.2  *See also Elizabeth M. v. Saul*, No. ED CV 20-00819-DFM, 2021 WL 1060232, at *4 (C.D. Cal. Mar. 19, 2021).  Thus, if the ALJ had found that Plaintiff was disabled and that the medical evidence was not definite as to the onset date, SSR 18-01p permits the ALJ to enlist a medical expert to assist in drawing inferences from the record to determine a remote date of onset.

Here, however, the ALJ determined that Plaintiff was <u>not</u> disabled before the expiration of his insured status.  (AR 964.)  Accordingly, the need for a medical expert to assist in inferring an onset date did not arise.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) ("Because the ALJ found that Sam was not disabled . . ., the question of when he became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply."); *see also Lair-Del Rio v. Astrue*, 380 F. App'x 694, 696 (9th Cir. 2010) (requirement to call a medical expert under SSR 83-20 "only applies where a claimant has been found disabled"); *Blair–Bain v. Astrue*, 356 F. App'x 85, 88 (9th Cir. 2009) (where the ALJ found the claimant "not disabled prior to the last date insured, we have no cause to remand under SSR 83-20"); *DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 175-76 (9th Cir. 2009) (same).  Once again, Plaintiff's "medical expert" argument does not support remand.[6]  (*See* AR 1024–25 (rejecting Plaintiff's onset date argument).)

**B.    The ALJ's RFC Determination is Not Erroneous**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence.

---

[6] Even if SSR 18-01p did apply, Plaintiff does not demonstrate that the medical evidence was "unavailable," "inadequate," or "ambiguous regarding the possibility" that the onset of Plaintiff's alleged disability occurred at that time. *Wellington v. Berryhill*, 878 F.3d 867, 827 (9th Cir. 2017).

20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 1.     The ALJ's Light RFC Finding is Supported by Substantial Evidence

Here, the ALJ appropriately considered all relevant evidence in finding Plaintiff could perform light work with additional postural and environmental limitations. First, as the ALJ explained, prior to Plaintiff's date last insured, he exhibited "little or no edema." (*See* AR 283 ("trace pretibial edema"); AR 290–91, 312–13 ("some associated edema"); AR 415 ("mild" lower extremity edema); AR 276–77, 282 (complaining of "intermittent" swelling in his feet); AR 424 (noting his feet are a "little swollen every now and then"); AR 384, 658, 765–68  (no edema). He also demonstrated good muscle tone and full (5/5) strength in his lower extremities.   (AR 283, 765–68.) All of this evidence was consistent with treating physician Dr. Shah's assessment that Plaintiff was "ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work." (AR 678.)

Recognizing Plaintiff's difficulty in carrying a five-gallon water bottle (*see* AR 414, 657), the ALJ discounted State agency physician Dr. Bayer's opinion that Plaintiff could lift/carry up to 50 pounds (*see* AR 77–78). The ALJ reasoned that, because Plaintiff complained of difficulty walking even short distances with a five-gallon bottle of water, which would weigh around 40 pounds, a restriction to light work was "more consistent with the overall record." (AR 962.) The ALJ also accommodated documentation in the record of Plaintiff's cervical and lumbar degenerative disease (*see* AR 323) and his complaints of back pain (AR 269–70, 983-94), and limited Plaintiff to occasional postural activities (AR 955, 959). These limitations were more restrictive than those endorsed by Dr. Shah (AR 678), Dr. Bayer (AR 77–78), or consultative

examiner Dr. Fernando (AR 768).

The ALJ also correctly observed that, prior to Plaintiff's date last insured, he primarily received evaluation and treatment for "lung issues." (*See* AR 386 (Plaintiff assessed with stage 1 COPD and prescribed inhalers);  AR 290–91, 312–13 (CT scan showed an irregular density in the lower lobe of the left lung); AR 325, 337 (imaging showing pulmonary nodules in the left lower lobe of the lung; Plaintiff had "moderate airflow obstruction" on spirometry testing); AR 467 (surgical biopsy showed that the left lower lobe mass was "granulomatous disease" and not malignant; lobectomy deemed unnecessary).  To account for evidence of respiratory symptoms, the ALJ included environmental limitations in Plaintiff's RFC, which precluded concentrated exposure to respiratory irritants such as gases, dust, smoke and/or fumes.  (AR 955, 959).  Such restrictions were consistent with the opinions of Drs. Fernando (AR 768)  and Bayer (AR 78), and more restrictive than Dr. Shah's opinion (AR 678), which did not include any environmental limitations.

The evidence on which Plaintiff relies in contending the ALJ's light RFC finding should be disturbed is not persuasive.  Plaintiff cites AR 710 as evidence of Plaintiff's leg pain, but no leg pain was assessed in that January 2014 progress note.  Instead, that record, which is a duplicate of AR 414–15, documents Plaintiff's difficulty carrying a five-gallon water bottle, that his feet were a "little swollen every now and then," and that he had mild lower extremity edema.  (AR 415.)  As discussed above, this was all accounted for by the ALJ in formulating Plaintiff's RFC.

Plaintiff contends that Dr. Fernando's opinion supports a more limited RFC than light.  (*See* Doc. 15 at 11 (citing AR 768).)  While true, he ignores the fact that the ALJ rejected that opinion, particularly the limitations to standing and walking for less than two hours and a need for feet elevation.  (AR 959.)  The ALJ reasoned that such limitations were "unsupported by the examination performed by this provider, as the examination revealed no swelling or edema, and the claimant was found to possess good muscle tone and strength in all four extremities."  (AR 949.)  The fact that Dr. Fernando's opinion is undermined by her examination observations is a

specific and legitimate reason to reject this portion of her opinion.[7]  An ALJ may properly discount an examining physician's opinion that is inconsistent with the medical record, including her own findings.  *See Valentine*, 574 F.3d at 692–93 (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.").  The Court finds that the ALJ's rationale—*which Plaintiff does not challenge*—is supported by substantial evidence. (*See* AR 765–68 (Dr. Fernando's physical examination results showing Plaintiff had good muscle tone and full (5/5) strength in his extremities; no edema; normal ranges of motion in his neck, back, and extremities, with "minimal discomfort" noted in his cervical spine; no swelling in his knees or ankles; and intact sensation and reflexes in his extremities).

Plaintiff also asserts, citing AR 802, "In 2014 Cardiologist Dinh, MD diagnosis [sic] [Plaintiff] with dyspnea on exertion related to pulmonary issues given [the] risk favors for coronary disease.  Dr. Dinh records Stevens cannot exercise." (Doc. 15 at 11.)  This assessment by Dr. Dinh, however, did not take place in 2014; instead, it occurred in 2015, five months after Plaintiff's date last insured.  It also does not support Plaintiff's argument, as a diagnosis alone does not establish a limitation in the ability to work.  *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (mere diagnosis of an impairment does not show disability).  Moreover, Plaintiff has not shown how the inability to *exercise*—which appears to be based on a self-report, as opposed to an assessment by Dr. Dinh—equates to the inability "to stand and walk for longer than two hours a day."  In fact, this record shows that Plaintiff's pedal edema, to which he points as reason for his alleged standing and walking impairment, had "resolved." (AR 802.)

Plaintiff's reliance on AR 860 is equally unavailing.  (*See* Doc. 15 at 11.)  That page of a treatment note prepared by Dr. Bellucci (not "Dr. Waterbury") in November 2016 simply lists ***Plaintiff's recount*** of his symptoms, including "blocked leg vessels," "leg edema," "numbness and

---

[7] Plaintiff filed his DIB claim before March 27, 2017, so Section 404.1527, not Section 404.1520c, governs the ALJ's evaluation of medical opinions.  *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

tingling," "back pain," "shortness of breath" "severe leg/foot swelling." (AR 859–60.) But Dr. Bellucci's physical examination of Plaintiff, not cited by him, fails to corroborate those symptoms. (*See* AR 861 (noting normal motor strength and tone; normal range of motion of all extremities; and no edema).) While "limited ambulation" was noted, there no was attribution of this finding by Dr. Bellucci (or any other provider) to a particular cause, contrary to Plaintiff's assertion that "Dr. Waterbury [sic] opines [Plaintiff's] blocked leg vessels and leg edema, with numbness and tingling, results in limited ambulations [sic]." (Doc. 15 at 11.)

The remainder of Plaintiff's criticism of the ALJ's RFC assessment is that the ALJ "limits his analysis" to his date last insured in December 2014 and implies evidence created after that date is "not relevant." (Doc. 15 at 10, 12.) Plaintiff points to two records that he contends demonstrate a "retrospective diagnosis" of a standing and walking impairment: Dr. Bellucci's December "Physical Residual Functional Capacity Questionnaire" completed in December 2016; and a January 2020 evaluation by Don Gaede, M.D. (*Id*. at 12, 13. *See also* Doc. 20 at 4.)

As stated by the Ninth Circuit: "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted). *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("[E]vidence post-dating the [date last insured] is probative of . . . pre-[date last insured] disability."); *Lester v. Chater*, 81 F.3d 821, 832) (9th Cir. 1995) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith*, 849 F.2d at 1225).[8] However, in this case, Plaintiff does not establish that either Dr. Bellucci or Dr. Gaede rendered opinions retrospective to a time period prior to Plaintiff's date last insured in December 2014. Indeed, as the ALJ noted (AR 961), Dr. Bellucci ***expressly opined*** that the "earliest date that the description of symptoms and limitations in this questionnaire applie[d]" was

---

[8] It bears noting that the ALJ did not reject either piece of evidence solely on the basis that is post-dated Plaintiff's last insured. (*See* AR 961 (finding Dr. Bellucci's opinion neither "necessarily reflective of the period of adjudication, nor consistent with later records."); AR 958 (discussing Dr. Gaede's findings).) In fact, the ALJ evaluated all of the medical evidence of record, including that dated after December 2014. (*See* AR 957–59 (discussing Plaintiff's medical records from 2015–2020).)

1   <u>January</u> <u>1</u>, <u>2016</u>.  (AR 941) (emphasis added).)  *See Daryl V. v. Saul*, No. 4:19-CV-05036-MKD,

2   2019 WL 7819803, at *5 (E.D. Wash. Oct. 31, 2019), *aff'd sub nom. Vooge v. Saul*, 840 F. App'x

3   253 (9th Cir. 2021) ("The ALJ reasonably found that Dr. Hamilton's opinion was entitled to less

4   weight because it focused on Plaintiff's limitations after the date last insured.  This was a specific

5   and legitimate reason to discredit Dr. Hamilton's opinion.").

6          As for Dr. Gaede, he performed an ultrasound of Plaintiff in January 2020 that showed

7   "scarring and reflux of [the] right popliteal vein," which led to him to "suspect" that Plaintiff "may

8   have had a prior 'silent' [deep vein thrombosis (DVT)] of the right leg."  (AR 1670–72.)  But Dr.

9   Gaede did not make a diagnosis of DVT, retrospective or otherwise, nor did he indicate any

10  "relation back" of DVT to any chronic condition of Plaintiff's that had been diagnosed during the

11  relevant time period.  *See, e.g., Morgan v. Colvin*, No. 6:12-CV-1235-AA, 2013 WL 6074119, at

12  *10 (D. Or. Nov. 13, 2013) ("[I]t is well-established that an ALJ may reject a medical opinion,

13  even that of a treating doctor, where 'it was completed . . . years after claimant's DLI and was not

14  offered as retrospective analysis.'") (citation omitted); *Boucher v. Colvin*, No. C13-47-MAT, 2013

15  WL 3778891, at *2–3 (W.D. Wash. July 18, 2013) (ALJ reasonably found later test results not

16  probative in relation to earlier time period; also finding the absence of any suggestion of retroactive

17  application to support the ALJ's conclusion); *Capobres v. Astrue*, No. CV 1:09-682-REB, 2011

18  WL 1114256 (D. Idaho Mar. 25, 2011) (ALJ did not err in rejecting opinion because it was outside

19  relevant time period and not controlling or persuasive before the DLI, nearly two and half years

20  earlier, where the opinion was not offered as retrospective to the relevant time period).  *Cf. Svaldi*

21  *v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017) (where medical opinions "refer back" to the

22  same chronic condition and symptoms discussed in his physician's opinion "from several years

23  prior," the "fact that those opinions were issued significantly after [the plaintiff's] DLI does not

24  undercut the weight those opinions are due").

25         While some evidence post-dating the date last insured, such as that cited by Plaintiff, may

26  show that his "condition has worsened to a point where sitting and standing may be chronically

27  impaired" (AR 956), he has not shown that his ability to perform these activities was as limited as

28  he alleges during the <u>relevant</u> <u>time</u> <u>period</u>.  *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393,

1394 (9th Cir. 1984) ("Only disabilities existing before [the date last insured] can trigger insurance benefits.").  The Court therefore finds that the ALJ did not err in assessing a light RFC for Plaintiff.[9]

**2.      The ALJ Did Not Err in Excluding Mental Limitations from Plaintiff's RFC**

The Court is not persuaded by Plaintiff's argument that the ALJ erred in not adding mental limitations to the RFC.  The ALJ recognized that Plaintiff endorsed depression, but concluded that it "did not appear that these symptoms rose to a debilitating level prior to the date last insured," particularly given that Plaintiff "had little to no mental health treatment prior to the date last insured" (AR 960).  *See Molina*, 674 F.3d at 1114 (finding that an ALJ can look to the level or frequency of treatment to discredit a plaintiff when there was no medical evidence that plaintiff's resistance to treatment was attributable to the mental impairment rather than personal preference).  The ALJ also discounted consultative examiner Dr. Lacy's opined moderate limitations, noting that they were "not fully consistent with the overall record"(AR 960).  *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600–01 (9th Cir. 1999)  (The ALJ may accord an opinion less weight based upon substantial evidence, including "clinical evidence" that the ALJ finds to be conflicting.).  These findings are supported by substantial evidence.  (*See* AR 283, 320, 375 (normal mental status findings); AR 818–21 (mental status examination performed by Dr. Lacy documenting normal results, including the ability to complete attention and concentration tasks without difficulty); *see also* AR 189–206 (Plaintiff's and his wife's adult function reports detailing Plaintiff's ability to prepare meals, do housework, drive, go out alone, take his dog to the park, pay attention, follow written and spoken instructions, handle changes in routine, spend time with others, and get along with authority figures).)

---

[9] Plaintiff also attacks the ALJ's RFC assessment alleging it ignores that his "COPD with obesity and asthma prevent him from engaging in exertional activity."  (Doc. 15 at 13–14.)  Other than this naked assertion (and a citation to the website "http://www.rheumatology.com"), Plaintiff offers no argument to support his contention, and the Court declines to formulate one for him.  *See, e.g., Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("When reading [the plaintiff's] brief, one wonders if [the plaintiff], in its own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim...[j]udges are not like pigs, hunting for truffles buried in briefs.")).  *See also Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim...."); *Hibbs v. Dept. of Hum. Resources,* 273 F.3d 844, 873 n.34 (deeming a one-sentence argument "too undeveloped to be capable of assessment.")

1    Plaintiff does not demonstrate otherwise.  Instead, he points to Dr. Lacy's diagnosis of

2   "major depressive disorder," but, as discussed above, mere diagnosis alone is not sufficient to

3   establish a medically determinable impairment, let alone functional limitations.  *See Key*, 754 F.2d

4   at 1549.  In his reply brief, Plaintiff additionally cites an assessment from "Psychotherapist Nelson"

5   at AR 942–45, which he contends describes his mental limitations.  (Doc. 20 at 7.)  However, that

6   assessment, prepared by Licensed Professional Counselor Shelly Nelson of Wauwatosa,

7   Wisconsin, pertains to a claimant named "China Johnson," and not to Plaintiff.[10]  (*See* AR 942–

8   46.)

9    In sum, the Court finds that substantial evidence supports the ALJ's conclusions regarding

10   the impact of Plaintiff's impairments on the RFC.  Plaintiff may disagree with the RFC, but the

11   Court must uphold the ALJ's determination because it is a rational interpretation of the evidence.

12   *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is

13   deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14   **C.      The ALJ Properly Discredited Plaintiff's Testimony**

15   **1.      Legal Standard**

16    In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

17   must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First,

18   the ALJ must determine whether the claimant has presented objective medical evidence of an

19   underlying impairment that could reasonably be expected to produce the pain or other symptoms

20   alleged.  *Id*.  The claimant is not required to show his impairment "could reasonably be expected

21   to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably

22   have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028,

23   1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering,

24   the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives

25   "specific, clear and convincing reasons" for the rejection.[11]  *Id*.  As the Ninth Circuit has explained:

26

27   [10] The Court does not know why an assessment of another claimant was included in the certified administrative record
     for Plaintiff.  In fact, Plaintiff's counsel appears unaware that the assessment pertained to someone other than Plaintiff,
28   despite having discussed it at length in their briefing.  (*See* Doc. 15 at 7; Doc. 20 at 7.)
     [11] The Court rejects the Commissioner's contention that a lesser standard of review applies.  (*See* Doc. 18 at 21 n.9.)

1
2
3
4

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

5
6
7
8
9
10

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

11
12
13
14
15
16

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

17

**2.     Analysis**

18
19
20
21
22
23
24
25
26
27
28

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 956.)  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 956.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  Here, the ALJ found Plaintiff's statements not credible because they are inconsistent with the medical record, including his hearing testimony, and inconsistent with his course of treatment, which controlled his symptoms.  (AR 956.)  The Court takes each finding in turn.

a.     Objective Medical Evidence

The ALJ found that Plaintiff's statements that he is unable to work due to debilitating edema and pain in his lower extremities are inconsistent with his testimony and the overall record indicating that his "condition has worsened over time, since the date last insured."  (AR 956.) Contradiction with evidence in the medical record is a "sufficient basis" for rejecting a claimant's subjective symptom testimony. *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008); *see Morgan*, 169 F.3d at 600 (upholding "conflict between [plaintiff's] testimony of subjective complaints and the objective medical evidence in the record" as "specific and substantial" reason undermining credibility). Although a lack of medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing § 404.1529(c)(2)).  Not only did the ALJ properly consider the medical evidence, but it was not the sole basis for discrediting Plaintiff's testimony.

Plaintiff testified at that administrative hearing that he cannot not stay on his feet for more than 15 to 20 minutes due to edema and back pain.  (AR 983–84.)  However, that testimony related to his condition ***at the time of hearing***—not during the relevant time period.  (*See* AR 983–84 ("Q. Okay. So, tell me then today what the -- in general, what is it that would keep you from being able to perform work ***at this point in time***, Mr. Stevens?  A. The fact that I can't stay on my feet for no longer than 15 or 20 minutes between by legs and feet swelling and my back giving out on me.").) (emphasis added).  In fact, Plaintiff testified he had a greater capacity for standing during the relevant time period, and that his condition has worsened since that time.  (See AR 986 ("Q. Okay. And then as we look back to a period of time in 2014 and I know that's going back seven years, how has your condition changed since that time or has it changed? Has it gotten better, gotten worse? How would you describe it?  A. It's gotten worse. ***Back then I could stay on -- stay on my feet for like almost an hour/45 minutes at a time.***  Now I'm lucky if I can get ten minutes in before I'm in -- got to sit down and finish up on a stool.").) (emphasis added).  Plaintiff's testimony about his abilities in 2014 casts doubt on his allegations regarding his condition during that time period. *See Thomas*, 278 F.3d at 958–59 (inconsistencies in a claimant's testimony may be used to discredit

subjective complaints); *Light*, 119 F.3d at 792 (in weighing plaintiff's credibility, the ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); *see also Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir.1989) (an ALJ can reject pain testimony based on contradictions in plaintiff's testimony).

Plaintiff's medical records from the relevant time period similarly fail to corroborate his subjective complaints.  Prior to Plaintiff's date last insured, he exhibited "little or no edema."  (*See* AR 283 ("trace pretibial edema"); AR 290–91, 312–13 ("some associated edema"); AR 415 ("mild" lower extremity edema); AR 276–77, 282 (complaining of "intermittent" swelling in his feet); AR 424 (noting his feet are a "little swollen every now and then"); AR 384, 658, 765–68  (no edema).  He also demonstrated good muscle tone and full (5/5) strength in his lower extremities. (AR 283, 765–68.)

In arguing that "evidence of edema in 2014 is in the record," Plaintiff relies on the same post-2014 medical records discussed above.  (*Compare* Doc. 15 at 16 *with* Section IV.B.1., *supra*.) While these later records indicate that Plaintiff's edema may have worsened in 2016, well ***after*** the date last insured, they do not support Plaintiff's testimony about the severity of any impairment due to edema up until December 2014.  *See Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971) ("Any deterioration in [a claimant's] condition subsequent to [the date last insured] is, of course, irrelevant.'").  *See also Vincent*, 739 F.2d at 1394 ("Only disabilities existing before [the date last insured] can trigger insurance benefits.").  Therefore, the Court finds no legal error in the ALJ's conclusion that the objective record was inconsistent with Plaintiff's symptom testimony.

### b.   Course of Treatment and Control of Symptoms

The other reason given by the ALJ for discrediting Plaintiff's subjective statements is that his course of treatment, which was "based around the lung masses and COPD, . . . seems to have been under control even with adverse affects [sic] from inhaled steroid and other steroid treatment." (AR 956.)  As discussed above, the record shows that Plaintiff primarily received evaluation and treatment for his lung ailments during the relevant period.  (*See* AR 386 (Plaintiff assessed with stage 1 COPD and prescribed inhalers); AR 290–91, 312–13 (CT scan showed an irregular density in the lower lobe of the left lung); AR 325, 337 (imaging showing pulmonary nodules in the left

lower lobe of the lung; Plaintiff had "moderate airflow obstruction" on spirometry testing); AR 467 (surgical biopsy showed that the left lower lobe mass was "granulomatous disease" and not malignant; lobectomy deemed unnecessary).

In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when the record shows their symptoms are controlled. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Here, the ALJ reasonably concluded from the record that Plaintiff's lung ailments were controlled during the relevant period, while recognizing he experienced negative side effects from his inhalers (*see* AR 657 (Plaintiff stopped using the prescribed Spiriva and Qvar inhalers due to adverse side effects, including blisters and dryness in the mouth.).)   For example, in January 2014, Plaintiff was asymptomatic, denied shortness of breath and wheezing, and reported that he had been given a prescription for Albuterol inhaler that he did not use before he did not need it.  (AR 382.)  During that visit, Plaintiff's lung, heart, and neurologic findings were normal with normal breath sounds and his oxygen levels were 98%.  (AR 384).  In April 2014, Plaintiff was not using inhalers due to above-described side effects.  (AR 658.)  On examination, he was in no obvious respiratory distress, had moderately decreased breath sounds on the left, with otherwise normal findings.  (AR 658.)  His oxygen levels were 97%.  (AR 658.)  In a May 2014 telephonic consultation, Plaintiff told Dr. Shah that he felt "pretty good" and did not want to take steroids.  (AR 663.)

Plaintiff cites a single record, an "abnormal x-ray that established reasons for his trouble breathing," as evidence that his lung mass and COPD were "not controlled."  (*See* Doc. 15 at 16.) But this x-ray simply confirms Plaintiff's lung abnormality as of June 2013, which led to his course of treatment described above.  (AR 291, 302.)  It does not rebut the substantial evidence relied on by the ALJ showing that Plaintiff's lung issues were under control after that date.   Plaintiff's improvement is therefore another clear and convincing reason for discounting his subjective symptom testimony.[12]   *See Morgan*, 169 F.3d at 599 (ALJ's adverse credibility determination

---

[12] Plaintiff contends in his briefing that the ALJ "discredits [Plaintiff] because he was not taking medication."  (Doc. 15 at 16.)  This is not so.  The ALJ expressly acknowledged Plaintiff **used** his prescribed inhalers and suffered "adverse" side effects as a result.  (AR 956.)  Yet the ALJ reasonably found that his lung issues were "under control" despite those side effects.  (AR 956.)

1   properly accounted for physician's report of improvement); *Odle v. Heckler*, 707 F.2d 439, 440

2   (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were

3   responsive to treatment).

4   **D.      The ALJ Did Not Err at Step Five**

5          At step five of the sequential evaluation, the burden of proof shifts to the Commissioner to

6   identify representative jobs that a claimant can perform given his age, education, work experience,

7   and RFC.   *See* 20 C.F.R. § 404.1520(g).   The ALJ may rely on vocational expert testimony

8   regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the

9   availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101.  For the testimony

10  of a VE to be considered reliable, the questioning of the VE "must include 'all of the claimant's

11  functional limitations, both physical and mental' supported by the record." *Thomas*, 278 F.3d at

12  956 (citations omitted).   If a claimant can perform other work, he is not disabled. 20 C.F.R. §

13  404.1520(g).

14         Here, the ALJ reasonably found that Plaintiff could perform jobs existing in significant

15  numbers in the national economy.   In so finding, the ALJ relied upon VE testimony at Plaintiff's

16  first hearing, which addressed the limitations that the ALJ included in Plaintiff's RFC.  (AR 963;

17  AR 47–49 (VE testimony); 955 (RFC).)   At that hearing, the VE testified that a worker with

18  Plaintiff's RFC could perform light work occupations including office helper, information clerk,

19  and mail room clerk.  (AR 47–49.)  The VE also provided the numbers of such occupations in the

20  national economy.  (AR 49.)  Because the "hypothetical that the ALJ posed to the VE contained all

21  of the limitations that the ALJ found credible and supported by substantial evidence in the record,"

22  the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper."

23  *Bayliss*, 427 F.3d at 1217.

24         In disputing the ALJ's step five findings, Plaintiff simply reiterates his disagreements with

25  the ALJ's assessment of his RFC, relying on the discounted opinion by Dr. Fernando opinion and

26  his discredited subjective complaints.  (*See* Doc. 15 at 17; Doc. 20 at 5.)  As set forth more fully

27  above, these contentions lack merit, and his arguments challenging the ALJ's step five findings fail

28

for the same reasons.[13]  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.").

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   __September 13, 2022__          _____/s/ *Sheila K. Oberto*_____
                                        UNITED STATES MAGISTRATE JUDGE

---

[13] Plaintiff makes a cursory reference in his briefing to 20 C.F.R. § 404.1529(c)(3), which requires an ALJ to consider whether a claimant's impairments medically equal the criteria of a listed impairment.  (CITE).  Plaintiff does not to explain how his impairments medically equaled a listed impairment, and this Court declines to consider this undeveloped argument.  *See* Section IV.B.1. n.9.  *See also Ford*, 950 F.3d at 1157 (finding ALJ had no obligation to further address medical equivalence where "[claimant's] attorney made passing reference to a 'combination of impairments' at the administrative hearing" without any further argument or explanation") (quoting *Burch*, 400 F.3d at 683); *Noah v. Berryhill*, 732 F. App'x 520, 521-22 (9th Cir. 2018) (unpublished) (claimant "does not proffer the requisite specific explanation as to how the medical evidence shows her impairments are medically equivalent).  Moreover, the ALJ sufficiently considered the severity of Plaintiff's impairments at step three (*see* AR 955).